## CHARLESTON.

STATE *v.* THELMA JOHNSON

(No. 6411)

Submitted April 10, 1929.     Decided April 16, 1929.

*J. Raymond Gordon* and *M. F. Matheny,* for plaintiff in error.

*Howard B. Lee,* Attorney General and *W. Elliott Neffien,* Assistant Attorney General, for the State.

LIVELY, JUDGE:

Upon the trial of an indictment for the murder of one Dave Myers, the defendant, Thelma Johnson, was convicted of voluntary manslaughter and sentenced to three years in the penitentiary. This writ followed.

The errors relied upon for reversal are the exclusion of certain evidence offered on behalf of the defendant, and the refusal of the trial court to set aside the verdict as contrary to the law and the evidence.

The record discloses that on October 16, 1927, the day of the fatal shooting, at about 2:30 o'clock in the afternoon, as the defendant was entering her home at No. 2 Frank court, Charleston, the deceased followed and struck her on the back of the head, knocking her into the front room, and continued the assault as she retreated to the rear of the house where he struck her again and knocked her against a dresser. It was then, according to defendant's testimony, that, being in imminent fear of death at the hands of the deceased, she secured a pistol from a dresser drawer and fired two shots at him, one of which penetrated his abdomen, causing death a day or so later. For at least a year prior to the fatal shooting, the relations between deceased and the defendant had been very intimate, and during a part of this time they had lived together.

Upon the trial, the defendant in support of her plea of

self-defense was permitted to testify to previous assaults made upon her by the deceased, but the trial court refused to permit other witnesses for the defendant to testify to the same assaults. The rejection of this evidence is relied upon as the chief ground for reversal.

The State contends that the evidence of the prior assaults was not admissible because they had been condoned by the defendant, and furthermore, if such evidence was admissible, the defendant having been permitted to testify in regard thereto, the exclusion of this cumulative testimony did not constitute prejudicial error.

There can be but little doubt that that evidence as to previous assaults made upon this same defendant, even though they may have antedated the killing by three weeks to five months, and even though the parties may have lived together after the assaults took place, was admissible to show the state of feeling or relations existing between the deceased and the defendant, and as bearing upon whether the latter was justified in believing her life to be in imminent danger when she fired the fatal shot. Vol. 2, Wharton's Criminal Ev. (10th ed.), sec. 918, page 1276, and sec. 925, page 1756; *State* v. *Hardin,* 91 W. Va. 149; Vol. 1, Wigmore on Ev. (2nd ed.), sec. 248; *Reg.* v. *Hopkins,* 10 Cox Cr. 229. Can it be said that the defendant has not been prejudiced by the exclusion of this testimony tending strongly to corroborate her in this vital point of her defense. We believe not. She was on trial for her life, and it may be that the jury taking that fact into consideration would not be inclined to give her testimony the same credence or weight as that of some disinterested witness. *Washington Gold Min. & Mil. Company* v. *O'Laughlin,* 105 Pac. (Colo.), 1092; *Domm* v. *Hollenbeck,* 102 N. E. (Ill.), 782, Ann. Cas. 1914B, 1272, 1276. It was error to reject this testimony.

The defendant further assigns as error the refusal of the trial court to permit the introduction of a statement alleged to have been made by the deceased in the presence of certain police officers at the hospital, a short time after the shooting, to the effect that he, the deceased, was at fault. This evidence was objected to because it was not shown that it was a dying

declaration. It was offered by the defendant as a part of the *res gestae*. The trial court took the view that the alleged statement was not a part of the *res gestae* and refused to permit its introduction. It is not clear at what time after the shooting the statement was made. It is shown that the officers responded immediately upon being called to the defendant's home, and that they went to the hospital when they learned the deceased had been taken there; but it does not appear how much time had elapsed after the shooting before the officers were summoned. Because of this indefiniteness of time, we believe that the trial court ruled correctly in excluding this testimony as a part of the *res gestae*. It is true that the time at which a declaration is made is not alone determinative, but it is an important fact to be considered in deciding whether a particular statement was a spontaneous one, and consequently part of the *res gestae*. It may be well to note, however, that had this evidence been offered for the sole purpose of impeaching the dying declaration, introduced by the state, alleged to have been made by the deceased a few hours before his death, in which he stated that he made no assault on the defendant, but that she shot him just after he had entered the house, it would have been admissible. Declarations made by the deceased contradicting his dying declaration in respect to the party accused of the homicide and as to the cause and circumstances of the crime are admissible to impeach him, though they were not shown to have been made under a sense of impending death, and( as it is generally impossible to do so), it is never necessary that the attention of the deceased should have been called to the occasion and circumstances of the contradictory statements." Underhill's Criminal Evidence, (3rd ed.), sec. 180, pp. 253, 254.

In view of the conclusions reached herein, it will not be necessary to consider the remaining assignment of error, that the verdict is contrary to the law and the evidence. The judgment will be reversed, the verdict set aside, and a new trial awarded.

*Reversed; verdict set aside;*
*new trial awarded.*